<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IDT CORPORATION, | Civil Action No. 13-1539 (SDW)(SCM) |
| Plaintiff, | |
| v. | **OPINION** |
| GIL BOOSIDAN, | |
| Defendant. | September 1, 2015 |

**WIGENTON,** District Judge

Before this Court is IDT Corporation's ("Plaintiff" or "IDT") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. Jurisdiction and venue are proper in this Court under 28 U.S.C. § 1441 and 28 U.S.C. § 1391(b), respectively. This motion is decided without oral argument as permitted under Federal Rule of Civil Procedure 78. For the reasons that follow, this Court **DENIES** Plaintiff's Motion for Summary Judgment and **DISMISSES** Defendant's common law fraud counterclaim.

**FACTUAL AND PROCEDURAL BACKGROUND**

IDT is a telecommunications company headquartered in Newark, New Jersey. (Compl. ¶ 1.) Gil Boosidan ("Defendant" or "Boosidan") is a former employee of IDT who held a variety of positions with the company until December 2012. (Boosidan Deposition ("Boosidan Dep."), 30:3-31:9; Ex. A.) According to Boosidan, he was continually employed by IDT from sometime in

1998 through December 31, 2012.  (Defendant's Brief in Opposition ("Def. Br. Opp."), p. 4.)
During this period, Boosidan held a non-executive position as an Assistant Treasurer of IDT in
2006.  (Boosidan Dep., 63:24–64:20.)  He also served as the Chief Executive Officer and Treasurer
of IDT Investments in 2007.  (Boosidan Dep. Ex. 6, Feb. 15, 2007 Letter from E. Tendler to W.
Behrens and D. Ames, Ex. C.)  However, according to IDT, Boosidan's titles were for "corporate
structure purposes only and not indicative of any material authority or responsibility." (Id.)  IDT
further contends that Boosidan never had a written contract of employment and was always an at-
will employee throughout his tenure with IDT.  (Jonas Dep., 165:24–167:2, Ex. D; Boosidan Dep.,
24:9–25:12, Ex. A.)

In either January or February of 2007, Boosidan was ordered to cease his ordinary work—
managing IDT's investments—pending an internal investigation at IDT concerning allegations of
unspecified misconduct filed by unnamed third parties. During this time, Boosidan continued to
receive a salary from the company.  (Boosidan Dep., 30:3–31:9, Ex. A.)  According to IDT, "[i]n
May 2007, after being on IDT's payroll for several months, performing minimal tasks, Boosidan
came to IDT 'seeking money'" (Pl. Br., p. 3.) Boosidan believed that he would not be performing
any services for IDT or be obliged to do so in exchange for his demand of payment.  (Boosidan
Dep., 94:3–11, Ex. A.) It is unclear whom Boosidan met with in May 2007, however, it is
undisputed that an agreement was not reached at that time. (Harvey Declaration ("Harvey Decl.")
¶ 6; Exhibit A.)

 Boosidan met with Howard Jonas ("Jonas"), Chairman of IDT, in the summer of 2007.
According to Boosidan, he and Jonas reached an oral agreement ("2007 Oral Agreement")
pursuant to which IDT agreed to pay him $4 million over five years via the following installment
scheme: an immediate lump sum payment of $500,000, which represents previously earned but

unpaid Performance Based Bonuses; an annual salary of $500,000 for five years to be remitted quarterly beginning in the third calendar quarter of 2007; and finally, a $1 million cash payment— secured by an irrevocable line of credit to be immediately drawn by IDT in Boosidan's favor— due upon expiration of the five-year agreement. (Boosidan Declaration, ¶¶ 25–29; Boosidan Tr. 86:13–87:6, 93:10–14, Harvey Ex. A.)  Boosidan alleges that Jonas indicated that he would present the 2007 Oral Agreement to the Compensation Committee of IDT's Board of Directors ("Compensation Committee") in order to "justify" the large amounts of money Boosidan would receive from IDT.  (Boosidan Tr. 87:21–25, 134:14–16, 135:2–3, 135:13–21; Harvey Ex. A; Boosidan Decl. ¶ 30.)

On July 30, 2007, the Compensation Committee voted on whether to approve the oral agreement. There is dispute as to what the Compensation Committee approved at this meeting. According to IDT, the Board approved a framework for Boosidan's *future* potential compensation. (Jonas Dep. at 67:14–18, Ex. D.; Boosidan Dep. 2007 Minutes of the Meeting of the Compensation Committee of the Board of Directors of IDT Corporation, Ex. E.)  IDT alleges that the Committee members agreed that approval of the proposed compensation structure would be contingent upon IDT's future agreements with Boosidan, if executives, including Jonas, determined that such agreements would be in the best interest of the company.  (Boosidan Dep. 2007 Minutes of the Meeting of the Compensation Committee of the Board of Directors of IDT Corporation, Ex. E.) Fundamentally, however, IDT denies that a cognizable oral agreement was reached between IDT and Boosidan, especially given that Jonas had no authority to enter an agreement with Boosidan on IDT's behalf without the approval of the Compensation Committee.  (Pl.'s Reply 2–3.) Boosidan disputes this assertion. He maintains that Jonas had unilateral authority to enter binding contracts on IDT's behalf. (See Def. Br. Opp., p. 7.)  IDT further asserts that even if Boosidan and

3

Jonas entered into an oral agreement, there is no evidence indicating that Jonas discussed its terms, as recited by Defendant, with the Compensation Committee.   (See generally Pl.'s reply.) Additionally, IDT contends that Boosidan and Jonas never discussed the dates on which Boosidan would receive the various payments for which he allegedly bargained. (Boosidan Dep. at 85:7–11, Ex. A; Boosidan Dep. at 89:8–14, Ex. A.)

Boosidan and Jonas met one more time in the months following the Compensation Committee meeting, but there are no records of what transpired during that meeting.  (Jonas Dep. at 109:13–110:5, Ex. D.)  IDT contends that although Boosidan claims to have entered an oral compensation agreement with IDT as of 2007, he did not seek to enforce the purported agreement at any time before 2013. In September of 2007, Boosidan's counsel sent IDT a letter seeking a "draft of the separation agreement" for Boosidan, but a separation agreement was never finalized or signed.  (Boosidan Dep. Ex. 14, Sept. 28, 2007 Letter from A. Hock to I. Greenstein, Ex. F.) The only conversation regarding Boosidan's compensation agreement that occurred between 2008 and 2012 was allegedly between Boosidan and an unidentified IDT employee at a private social engagement in 2010.  (Boosidan Dep. at 21:21–23:4; 24:2–5, Ex. A.) According to Boosidan, this former IDT employee told Boosidan that he tried to talk to the company about Boosidan's demands, and that he might try to do so again. (Id.)  Neither Boosidan nor any one acting on his behalf sent any written communication to IDT regarding Boosidan's compensation during this time period.  (Boosidan Dep. at 18:7–21:20, Ex. A.)

On February 11, 2013, counsel for Boosidan informed IDT via letter of Boosidan's intention to file suit against IDT. (Harvey Decl. ¶ 4.) On March 13, 2013, Plaintiff filed a Complaint against Defendant for declaratory judgment clarifying that Defendant has no valid or cognizable claim against Plaintiff and that Plaintiff owes no further compensation to Defendant in

this Court. (Dkt. No. 1.) In his answer, filed on April 9, 2013, Defendant asserted counterclaims for breach of contract, common law fraud, unjust enrichment, and quantum meruit.  (Harvey Decl. ¶ 5.)

Prior to filing his answer in federal court, Defendant initiated a complaint against Plaintiff in New York state court, seeking damages for breach of contract, common law fraud, unjust enrichment, and quantum meruit.  (Id. ¶ 6.)  On April 17, 2013, Defendant's state action was removed to the United States District Court for the Southern District of New York, and then transferred to this district on May 8, 2013. (Id.)  Defendant voluntarily dismissed that complaint on July 9, 2013 after filing his answer in this action.  (Id. ¶ 7.)

On January 22, 2015, Plaintiff filed the instant motion for summary judgment.  (Dkt. No. 44, 46.) Defendant opposes the motion. (Dkt. No. 57.)

**LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis added).  A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law."  Id. at 248.  A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Summary judgment motion must be granted unless the party opposing the motion "provides evidence 'such that a reasonable jury could return a verdict for the nonmoving party.'" *Lawrence v. National Westminster Bank New Jersey*, 98 F.3d 61, 65 (3d Cir. 1996) (quoting *Anderson*, 477 U.S. at 248). Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325). Further, the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of its case." *Black Car Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286 (D.N.J. 2004). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof," then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322-23.

An oral contract is not enforceable unless it meets the basic elements of a contract: 1) mutual assent or "meeting of the minds," 2) consideration from both parties, and 3) terms that are "sufficiently definite that the performance to be rendered by each party can be ascertained with reasonable certainty." *Shogen v. Global Aggressive Growth Fund, Ltd.,* U.S. Dist. LEXIS 31093, at *6 (D.N.J. Aug. 3, 2007) (quoting *Weichert Co. Realtors v. Ryan,* 128 N.J. 427, 435 (1992)). A contract is enforceable if the parties "'agree on the essential terms and manifest an intention to be bound by those terms[.]'" Id. at *12. Under New Jersey law,

> Parties may orally, by informal memorandum, or by both agree upon all the essential terms of the contract and effectively bind themselves thereon, if that is their intention, even though they contemplated execution later of a formal document to memorialize their undertaking. The ultimate question is one of intent.

*McBarron v. Kipling Woods, LLC,* 365 N.J. Super. 114, 116 (App. Div. 2004) (quoting *Comerata v. Chaumont, Inc.*, 52 N.J. Super. 299, 305 (App. Div. 1956)). In order to determine intent, courts may consider the parties actions in a previous dealing and the nature and complexity of the transaction. *Surf & Turf Dev. LLC v. Cestone,* 2006 N.J. Super. Unpub. LEXIS 1832, at *2 (App. Div. Oct. 26, 2006).

## DISCUSSION

### *1. Validity of the Oral Agreement*

#### *a. Consideration*

IDT contends that Boosidan's purported oral contract is invalid because it lacks consideration, an essential element of a cognizable oral agreement. When exercising diversity jurisdiction, federal courts generally apply the substantive law of the state in which they sit. *Horng Technical Enterprise Co., Ltd. v. Sakar Intern., Inc.*, 432 Fed. Appx 172, 175 (3d Cir. 2011). Therefore, this Court will apply New Jersey law.

Consideration is a bargained-for exchange of a promise or performance that may consist of an act, a forbearance, or the creation, modification, or destruction of a legal relation. *Hills v. Bank of America*, 2014 WL 4113131, at *4 (D.N.J. June 30, 2014) (citing *Sipko v. Koger, Inc.*, 214 N.J. 364, 378 (2013)). "If the consideration requirement is met, there is no additional requirement of gain or benefit to the promisor, loss of detriment to the promisee, equivalence in values exchanged, or mutuality of obligation." *Commerce Bancorp, Inc. v. BK Intern. Ins. Brokers, Ltd.*, 490 F. Supp. 2d 556, 561 (D.N.J. 2007) (quoting *Shebar v. Sanyo Bus. Sys. Corp.*, 544 A.2d 377, 383 (N.J. 1988).

Plaintiff argues that there was no consideration for the 2007 Oral Agreement because Boosidan "(a) did not believe he owed any obligations to IDT; (b) did not expect to do any work whatsoever for the company; (c) did not discuss or agree with Jonas that IDT would receive a release of potential claims in exchange for payment; (d) never discussed or entered into an agreement by which he agreed not to compete with IDT in any way, and (e) never entered into a non-disparagement agreement by which he agreed to refrain from speaking negatively about IDT in any way." (Pl.'s Mot. for Summ. J., 9.) By contrast, Defendant argues that consideration exists in that from 2007 and 2012, IDT paid Boosidan for his expertise, experience, and availability, whenever it needed assistance. (Def. Br. Opp., p. 14.) IDT admits that Boosidan provided the company security in the knowledge that they could always rely on him when necessary. (Jonas Tr. 152:20-25; 153:2-7, Harvey Ex. "D.") Though, arguably, Boosidan received $200,000 per year for those services.

Importantly, however, Defendant posits that consideration "came in the form of settlement of Boosidan's claims arising out of the Investigation and the Defamatory Letter and in the form of IDT obtaining continued confidential treatment by Boosidan of his knowledge concerning IDT's

8

illicit transaction with Charles Kushner, IDT's tax liability relating to its sale of Net2Phone, and the Security and Exchange Commission's audit of IDT's claim that its international telephone operations were based in Puerto Rico when its international switches were located in New Jersey." (Def. Br. Opp., p. 14.) A promisee's relinquishment of a duly-possessed right to his detriment and to the benefit of the promisor can be deemed sufficient consideration. *See Sipko*, 214 N.J. at 378. IDT does not dispute, or otherwise address, the contention that Defendant relinquished his right to sue IDT for the aforementioned reasons in exchange for monetary compensation. As such, this Court is not satisfied that the 2007 agreement lacks consideration.

### b. *Specificity and Definiteness*

Under New Jersey law, if an agreement lacks "basic essentials" of a contract or is not "sufficiently definite" such that "the performance to be rendered can be ascertained with reasonable certainty", the contract will be deemed unenforceable. *Juster Acquisition Co., LLC v. North Hudson Sewerage Authority*, 2014 WL 268652, at *6 (D.N.J. Jan. 23, 2014) (citing *Weichert Co. Realtors,* 128 N.J.at 435); *see also Heim v. Shore,* 56 N.J. Super. 62, 72-73 (App. Div. 1959) (finding agreement unenforceable because parties did not agree on terms of payment, principal amount of mortgage, due date, and interest rate). IDT points out that Boosidan admitted that he and Jonas did not discuss or agree on the manner or time of payment, dates of payment, nor manner in which the letter of credit would be issued. (Pl.'s Mot. for Summ. J., 10). Furthermore, IDT argues that there was no fully formed contract because the "agreement" lacked general releases, non-disparagement clauses, and a non-competition agreement. (Pl. Memo. 5, 6, 9.)

First, there is no legal precedent identifying covenants not to compete or disparage as essential elements of an oral contract. There is evidence, although disputed, that the alleged agreement was somewhat definite. Boosidan has alleged that the liquidated amount of $500,000

for unpaid Performance Based Bonuses was to be paid "immediately," meaning "at once; instantly." (Def. Br. Opp., p. 9.) Additionally, Defendant notes that he requested that the letter of credit be immediately secured in his name and made payable at the end of his employment, which was set at five years from September 1, 2007. (Id. at 15.) Consequently, this Court is not persuaded that the agreement is indefinite as a matter of law.

### 2. *Unjust Enrichment*

IDT seeks summary judgment on Boosidan's counterclaim of unjust enrichment. The doctrine of unjust enrichment rests on the equitable principle that one party shall not be allowed to enrich itself unjustly at the expense of another. *Eli Lilly and Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 495 (D.N.J. 1998) (citing *Callano v. Oakwood Park Homes Corp.*, 91 N.J. Super. 105 (App. Div. 1966). To recover under this doctrine, plaintiff must prove that he expected remuneration from the defendant when the defendant received the benefit, and that the failure to compensate the plaintiff enriched the defendant. *Id.* (quoting *VRG Corp. v. GKN Realty*, 135 N.J. 539, 554 (1994).

The parties disagree as to whether Boosidan actually performed any services or conferred any benefits on IDT in exchange for the claimed payments. On one hand, Plaintiff emphasizes Boosidan's admission that he "had no obligation to perform any work or provide anything of value to IDT and he never believed he would perform any services for IDT." (Harvey Decl. ¶¶ 28, 30. Ex. A; IDT Rule 56.1 St. ¶ 15.) Conversely, Defendant contends that Jonas stated during his meeting with Defendant that it was worth paying Boosidan for the services he was performing for the company. Defendant further contends that according to the minutes of the Compensation Committee meeting, the Compensation Committee acknowledged that Boosidan was entitled to

no less than $3 million for "his past services to the Company," but that IDT had only paid him $1,083.333 from August 1, 2007 through December 31, 2012, leaving an unpaid balance of $2,469,264.25 for past services and unpaid Performance Based Bonuses.  (Boosidan Decl. ¶ 37; Goldstein E. "D".)

To summarize, Defendant's unjust enrichment claim rests upon his assertion that he was insufficiently compensated for the services he provided to IDT before 2007. IDT, however, contends that the oral agreement, if it existed, was not meant to compensate past services, but rather to create a compensation framework for potential future services, which IDT maintains that Boosidan cannot prove that he performed after 2007. Clearly, this is a disagreement as to material facts that are vital to the resolution of this case. Consequently, summary judgment is denied.

### 3.  *Quantum Meruit*

Defendant asserts a counterclaim for quantum meruit as an alternate theory of recovery. Quantum meruit is a quasi-contract principle, similar to the theory of unjust enrichment, "that enables the performing party to recover the reasonable value of the services rendered." *Id.* (citing *Weichert Co. Realtors*, 128 N.J. at 437–38). It allows a party who performed services at the request of another, but without any agreement or understanding regarding remuneration, to receive reasonable compensation. *Canadian Nat. Ry.*, 811 F. Supp. 2d at 1033 (quoting *Kopin v. Orange Prods.*, 297 N.J. Super. 353, 367–68 (App. Div. 1997)). A claimant for quantum meruit must establish: 1) the performance of services in good faith; 2) the acceptance of services by the person to whom they are rendered; 3) an expectation of compensation therefore; and 4) the reasonable value of the services. *Canadian Nat. Ry.,* 811 F. Supp. 2d at 1033.

IDT argues that Defendant cannot prove his entitlement to recovery under quantum meruit

because past consideration—services provided by the claimant prior to the formation of the alleged agreement—cannot form the basis of a contract or quasi-contractual obligation. *Scagnelli v. Schiavone*, 2012 WL 3578163, at *9 (D.N.J. Aug. 20, 2012). Therefore, in Plaintiff's view, Defendant cannot assert that the services he rendered prior to the 2007 Oral Agreement provide requisite consideration, as only the services that Defendant provided *after* the 2007 Oral Agreement may serve as consideration. However, because there is a genuine dispute regarding whether Defendant actually provided services to IDT after 2007, this issue cannot be resolved as a matter of law.

    **4.**   *Common Law Fraud*

IDT contends that Boosidan cannot prove his common law fraud counterclaim against IDT. Boosidan agrees. (<u>See</u> Def. Opp. Br., p. 21.) As such, that counterclaim will be dismissed.

**CONCLUSION**

For the reasons set forth above, the Plaintiff's Motion for Summary Judgment is **DENIED** and Defendant's fraud counterclaim is **DISMISSED**. An appropriate order will be filed with this opinion.

<u>s/ Susan D. Wigenton</u>    
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig:   Clerk
cc:    Magistrate Judge Steven C. Mannion